Tyler B. Ayres, Bar No. 9200
Stephen A. Starr, Bar No. 14800
12339 S. 800 E. Ste. 101
Draper UT 84020
(801) 255-5555 Phone
(801) 255-5588 Fax
Tyler@AyresLawFirm.com
SAStarr@AyresLawFirm.com

Attorney for Plaintiff

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
350 South Main Street, Room 150, Salt Lake City, UT 84101
Phone (801) 524-6100

---

| | |
|---|---|
| MARLON JONES,<br><br>                              Plaintiff,<br><br>vs.<br><br>JAMES WOODS, KELVYN CULLIMORE, COTTONWOOD HEIGHTS,  and JOHN AND JANE DOES 1-10,<br><br>                              Defendants. | **COMPLAINT AND JURY DEMAND**<br><br>Civil No.:<br><br><br>Judge: |

The Plaintiff ASSISTANT FIRE CHIEF MARLON JONES ("Plaintiff"), by and through

his attorney Tyler Ayres and AYRES LAW FIRM LLP, makes demand for a jury trial and, upon

information and belief alleges as follows:

## <u>INTRODUCTION</u>

1.      This is an action for injunctive and declaratory relief and statutory attorney's fees

brought pursuant to 28 USC § 1983  and the Utah State Constitution.  This action is based upon

Defendant's policies and practices in connection with the unregulated distribution of internal

electronic data regarding Plaintiff's private and confidential medical records and information obtained pursuant to Utah Code § 58-37f-101. Additionally, the Plaintiff asserts a claim against the Defendants under the Fair Credit Reporting Act, 15 U.S.C. § 1681.

2.      In practice, the Prescription Drug Database (the Database) was created in 1995 by the Utah State Legislature.  When a patient in the State of Utah is prescribed a medication by a licensed physician, the Database collects and maintains personal, private information about every medication prescribed and the patient's corresponding medical condition.

3.      The Database can be utilized by local governments, like Cottonwood Heights, for employment purposes.

4.      The personal  information contained in the Database is also available to law enforcement through access to the database pursuant to Utah Code § 58-37f-301.

5.      In order to obtain access to the database, law enforcement personnel are simply required to either (1) attain post certification and be hired by a Federal, State, or local law enforcement agency or (2) be authorized by a Federal, State, or local law enforcement agency as a prosecuting attorney or investigator.

6.      No other certification, training, or assignment is necessary for law enforcement personnel to obtain access to the Database.

7.      Once law enforcement has obtained a password for the database there is no independent oversight of how law enforcement uses the database.

8.      The unjustified and unregulated collection and subsequent distribution of personal and private medical electronic data to law enforcement is an unjustified risk of the violation of a patient/employees right to privacy and thereby deprives the Plaintiff, and other patients similarly situated, of his rights to liberty and privacy without due process of law.

9.    Specifically, the unfettered access to private and confidential medical records regarding various physical, mental, and emotional medical conditions that individuals are dealing with deprives them of the following protected rights:

a)    Their constitutionally protected right to privacy with regard to their medical information.

b)    The right of protection against self incrimination from the unauthorized use of their private medical records obtained by medical personnel.

10.    The distribution of such electronic data also deprives the Plaintiff and others similarly situated of the following property interests:

a)    The value of the claims and defenses that they have the right to assert in employment and legal matters regarding allegations stemming from the unjustified invasion of their privacy rights insofar as asserting such claims requires that they first risk becoming accused of crimes and or having their employment status impacted.

b)    The value of their employment and privacy, insofar as their rights as employees and their interests as patients can only be asserted at the price of declining proper medical treatment in order to protect their rights associated with their employment as well as their right to privacy.

11.    The electronic data is distributed by the Utah Department of Commerce through the Database to law enforcement without affording the Plaintiff and other patients/employees who are subjected to this intrusion of privacy any opportunity whatsoever to have their names stricken from the list or the information protected as private.  This results in the deprivation of their liberty and property without even the slightest semblance of due process.

12.     Utah Code § 58-37f-301 allows unregulated access of any person's private medical history on the Database without reasonable suspicion of criminal activity or any other articulatable standard to guide  law enforcement's access to the Database.  In reality, there is zero oversight of how the database is being used by law enforcement.  As a result, law enforcement is able to circumvent a person's privacy rights on a whim by searching for that person on the Database.

13.     In addition, the distribution of such data to law enforcement compels patients, like the Plaintiff, to choose between (a) visiting the doctor and seeking medical attention and prescription medications or (b) abandoning any privacy interest they have regarding medical conditions and corresponding treatments.

14.     Forcing patients to abandon medical care to avoid the irreparable harm caused by an invasion of privacy deprives them of liberty without due process.

15.     As set forth herein, the unregulated access or distribution of such electronic data by or to law enforcement will cause the Plaintiff, who is facing the imminent threat of a medical condition and or emergency medical conditions, to forego his privacy interests.

16.     The electronic data provided to law enforcement through it's unfettered access to the Database includes the patient's name, date of birth, and address.  It also includes the name of the treating physician, the approximate time the patient met with the physician/prescriber, the name of the prescription medication, and the dosage the patient was prescribed.

17.     With this information, any person with access to the Database is able to deduce not only the patient's specific symptoms, but potentially the underlying condition manifested by those symptoms.  Such policy and practice constitutes a violation of Plaintiff's due process rights

under the Federal and Utah State Constitutions as well as under the Health Insurance Portability and Accountability Act (HIPAA).

18.     HIPPA protected information is protected as private and confidential regardless of who is using or disseminating the information

19.     Distribution of or access to electronic data by law enforcement is not subject to any independent standards or regulatory compliance, resulting in the illegal use of the data by officers and employers in violation of the Fair Credit Reporting Act.

20.     The distribution of such electronic data is antithetical to the Utah Department of Commerce's overriding obligation to protect and maintain the confidentiality and privacy of all patient's information.

21.     The Defendants' policies  and practices described herein are ***ultra vires*** of the Defendants' constitutional and statutory mandate to not violate a person's liberty and privacy interests and results in a further denial of due process under both the Federal and Utah State Constitutions as well as Federal and State statutes.

22.     The distribution to and receipt of such electronic data was used by Cottonwood Heights for employment related decisions.

23.     On information and belief, Cottonwood Heights and James Woods engaged in such practices in furtherance of a policy of "administrative convenience" enabling law enforcement to circumvent a patient/employee's right to privacy and due process which would otherwise be protected by requiring probable cause and a search warrant to obtain said information..

24.     There is no legitimate government interest in the unfettered access to this private information.  Unregulated access should not be tolerated in either the name of illicit drug use prevention, the broader prevention of criminal activity, or for employment decisions.

25.     Unless the Defendants are enjoined and restrained from engaging in such practices, the Plaintiff, and hundreds of thousands of other individuals whose right to privacy is threatened by law enforcement, will suffer immediate and irreparable harm because their private information is available to any law enforcement personnel who elects to obtain a password from the Utah Department of Commerce Prescription Drug Database.

## JURISDICTION AND VENUE

26.     This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Plaintiff's cause of action arising under the Constitution of the United States and 42 U.S.C. § 1983 and pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over Plaintiff's causes of action arising under the Utah state law pursuant to 28 U.S.C. § 1367.

27.     Venue lies in the United States District Court for the District of Utah because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Salt Lake County, Utah.  28 U.S.C. § 1391(b)(2).

28.     Defendants are subject to personal jurisdiction within this district.

## PARTIES

29.     Plaintiff MARLON JONES is a citizen of the United States and a resident of the City of Salt Lake City, Salt Lake County,  State of Utah.

30.     Plaintiff was at all relevant times to this matter employed as a Fire Fighter with Unified Fire Department in Salt Lake County.

31.     Defendant JAMES WOODS is or was a detective with the Cottonwood Heights Police Department at all relevant times herein.

32.     Defendant Woods is sued in his official capacity for prospective relief, and as an indispensable party, whose presence is necessary to provide full and complete relief to the Plaintiff.

33.     KELVYN CULLIMORE  is the Mayor of Cottonwood Heights and has been the Mayor of Cottonwood Heights for all times relevant to this action.

34.     As the Mayor, Cullimore is responsible to direct the actions of city employees including the Chief of Police and Detective James Woods.

35.     As the Mayor for Cottonwood Heights, Kelvyn Cullimore is assigned to sit on the Board of Unified Fire and at all relevant times herein was a member of the Unified Fire Board.

36.     As a member of the Unified Fire Board, Cullimore has direct access to and impact upon the employment of Plaintiff.

37.     Defendant Cottonwood Heights employs or employed Detective Woods at all relevant times and directed Detective Woods' actions by and through his official conduct.

38.     As an employee hired to perform police functions, Detective Woods is subject to the command structure for the police department which directs and instructs his activities. Detective Woods is responsible to investigate matters assigned to him and report on his findings.

39.     During all times mentioned in this complaint, the defendants and each of them, acting separately and in concert, engaged in acts and/or omissions, or have threatened to engage in acts and/or omissions, which constitute deprivations of the Plaintiff's constitutional rights, and

the privileges and immunities of the Plaintiff, and while these are, or are threatened to be, carried

out under color of law, they have no justification or excuse, and were instead gratuitous, illegal,

improper and unrelated to any activity in which the defendants may appropriately and legally

engage in the course of administering and maintaining the law enforcement operations of

Cottonwood Heights or the State of Utah.

40.     The Defendants made use of the electronic data obtained by them in connection

with employment decisions.


### BACKGROUND OF THIS ACTION AND THE DEFENDANTS' CREATION AND DISTRIBUTION OF THE UTAH PRESCRIPTION DRUG DATABASE

41.     In or about 1995 the Utah Department of Commerce ("UDC") began compiling

statistical data  and reports, in electronic form, which recorded the activities of all prescription

drug information (the prescription drug database). Such data and reports were originally

prepared, created and intended to be used, by medical personnel for the prevention and detection

of illegal and or dangerous use of prescription medication.

42.     UDC is a person under the Fair Credit Reporting Act, 15 U.S.C. §  1681a (b)

which includes governments, governmental units or agencies.

43.     By creating and maintaining the database, the UDC on a cooperative non-profit

basis regularly engages in the practice of assembling information for the purpose of furnishing

reports to third parties and uses means or facilities of interstate commerce for preparing or

furnishing the reports to third parties.  UDC meets the definition of a consumer reporting agency

under the Fair Credit Reporting Act, 15 U.S.C. §  1681a (f).

44.     The data and reports prepared by UDC consist of any and all prescriptions for medication made by any medical care provider with the state of Utah and provided to any pharmacy or pharmacist for fulfillment of such prescription.

45.     The database meets the definition of a "consumer report" under the Fair Credit Reporting Act, 15 U.S.C. § 1681a (d) because it contains information about the personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing an individual's eligibility in connection with employment. It was foreseeable that the information from the UDC's database could be and would be used for this purpose.

46.     Utah Code § 58-37f-301(k) allows access to database by Federal, State, and Local law enforcement agencies and there are no limits imposed on the purposes for which it may be used.

47.     No rules, regulations or procedures have been promulgated, and no notice or opportunity is provided to patients to challenge the law enforcements investigation and invasion of privacy.

48.     UDC provides access to law enforcement at their unfettered and unregulated discretion. Once a person obtains a password all that person needs to gain access to the private information is access to the internet and a name.

49.     This information is provided to any officer who asks any person for identification. There is no requirement that any law enforcement, or other party to whom they may freely and do share the information, demonstrate a permissible purpose to obtain the consumer report from UDC as required by the Fair Credit Reporting Act, § 1681b .

50.     Such data and reports are provided by UDC to law enforcement without any significant regulation, oversight, certifications or written consent of the person whose information is being provided.  The statute only requires that the law enforcement agent be engaged as a "specific  duty of their employment in enforcing laws: **(i)** regulating controlled substances **(ii)** investigating insurance fraud, Medicaid fraud, or Medicare fraud; or**(iii)** providing information about a criminal defendant to defense counsel, upon request during the discovery process, for the purpose of establishing a defense in a criminal case.

51.     There are no meaningful restrictions on the party receiving the information to prohibit the further dissemination of the information to other parties. Detective Woods disseminated the information he obtained from the database about Jones to Defendant Cottonwood Heights and Defendant Kelvyn Cullimore who oversees and impacts the employment position of Plaintiff.  This information was relied on in an attempt to terminate Jones from his employment.

52.     In practice, there is no oversight or regulation regarding this provision of the statute.  Since the inception of the database there have been no independent investigations of individual officers and or agencies who are provided access.

53.     The only investigations regarding the database since it was created in 1995 have come about as a report of illicit use of the database after it was abused and the rights of specific individuals were forsaken.

54.     In the twenty years since the database was created by statute there have been fewer than ten investigations regarding the use of the statute by law enforcement.

55.     Upon information and belief, the information from the database can and is used by persons such as Defendant Cottonwood Heights and Cullimore in evaluating employment.

## FACTS PERTAINING TO THE PLAINTIFF ASSISTANT FIRE CHIEF MARLON JONES

56.     The Plaintiff Assistant Fire Chief Marlon Jones ("the Plaintiff") is employed by Unified Fire and is an Assistant Fire Chief and has been for all times relevant to this matter.

57.     Plaintiff was assigned as the southeast area commander for all times relevant to this matter.

58.     On April 23, 2013 Detective James Woods of the Cottonwood Heights Police Department was contacted by the Chief of Police for Cottonwood Heights Robbie Russo and informed that Unified Fire was reporting that medications were taken from ambulances at several fire departments in the Salt Lake Valley some of which were located in the southeast part of the valley.

59.     The medications that were missing from the fire departments were (1) Versed which is also known as Midazolam and is used to sedate a person who has experienced trauma or who is having minor surgery, (2) Morphine which is an opioid pain medication also referred to as a narcotic, and (3) Fentanyl which is an opioid pain medication used to treat "breakthrough" cancer pain.

60.     Police Chief Russo provided Detective Woods with a list of Unified Fire Department employees of which Assistant Fire Chief Jones was one of 480.

61.     Police Chief Russo obtained this list of employees of Unified Fire Department from Cottonwood Heights Mayor Kelvyn Cullimore who sits on the Board for Unified Fire Department.

62.     The list was provided by Mayor Kelvyn Cullimore as a board member of Unified Fire to Russo to obtain information for and about the employee's of Unified Fire.

63.    Detective Woods used this list to investigate each and every one of the 480 employees confidential and protected medical histories through the UDC database.

64.    Detective Woods used the list of names and the subsequent investigation of their prescription drug histories to "develop suspect leads of those who have the appearance of Opioid dependencies."  *See* Cottonwood Heights Police Report 13X002361 p. 3.

65.    Based upon his investigation and determination that Plaintiff was "Opioid dependent" Detective Woods included Plaintiff in a list of four "suspects" for a completely different crime than he was investigating when he received the list of names. *See* Cottonwood Heights Police Report 13X002361 p.3.

66.    Detective Woods indicates that he was able to determine that Plaintiff used three separate doctors for medical treatment. *See* Cottonwood Heights Police Report 13X002361 p.3.

67.    On April 26, 2013 Detective Woods used the information that he obtained from the investigation of the prescription drug database and contacted Plaintiff's doctors and pharmacists multiple times to discuss his private medical conditions and their treatment of Chief Jones as a patient.

68.    During these conversations, Detective Woods did not limit his conversation regarding Jones's medical conditions to his doctors.  Rather, the detective would discuss this private information with whomever he could get to talk about it.  Including but not limited to nurses, receptionists, assistants, and anyone else he believed he could obtain private information from.

69.    Detective Woods learned about the treatment provided and formed the opinion based upon his investigation and medical expertise, that Plaintiff did not require the treatment determined necessary by his three separate doctors..

70.   Detective Woods' investigation into Plaintiff's medical history was not limited to his prescriptions for Opioids or other pain medications.

71.   Detective Woods discussed all of Chief Jones medical conditions with his health care providers or whomever would discuss it with him.

72.   During the interrogation of the health care providers at least one of them reported that they felt "intimidated" and "pushed" by Detective Woods to provide more information than was appropriate.

73.   Detective Woods reported all of the medications that Plaintiff was receiving from his various medical treatment providers to Police Chief Russo and Mayor Kelvyn Cullimore.

74.   None of Jones's doctors believed or thought that he was abusing prescription medications or taking too many medications and each of them reported as much to Detective Woods.

75.   On April 25, 2013 Detective Woods met with Unified Fire Command Staff, Plaintiff's direct employer, to discuss Plaintiff's employment situation.

76.   Upon information and belief, Detective Woods shared information he had obtained from the database at the meeting regarding Plaintiff as well as all of the other 480 names on the list provided.

77.   Detective Woods provided copies of the Jones's private medical records to Police Chief Russo and to Mayor Cullimore.

78.   At Unified Fire Board meetings following the investigation, Mayor Cullimore disclosed Assistant Chief Jones's prescription drug records to members of the Board and openly discussed the Chief's use of these medications.

79.     In these meetings Mayor Cullimore discussed Chief's Jones's position with Unified Fire and openly called for the termination of his position with Unified because of the criminal charges against Chief Jones.

80.     At no time prior to the filing of charges was Plaintiff made aware of any investigation into his use of prescription medication.

81.     Prior to the charges being filed Plaintiff did not provide permission for Detective Woods or Defendant Cottonwood Heights to review his medical information.

82.     Neither Detective Woods nor Cottonwood Heights sought the consent of Plaintiff to review his medical history.

83.     Prior to the inspection of Assistant Chief Jones's records in the prescription drug database Detective Woods did not seek a warrant to review Plaintiff's medical history.

84.     Detective Woods did not have reasonable suspicion of any criminal activity committed by Plaintiff prior to accessing Plaintiff's private medical history. .

85.     None of the Defendants met the requirements of 15 U.S.C. § 1681b to obtain the medical information from the UDC database.

86.     Using the information obtained as a result of the investigation into Plaintiff's medical history, Detective Woods screened charges against Plaintiff for violation of Utah Code § 58-37-8(3)(a)(ii) with Assistant District Attorney Ethan Rampton.

87.     On May 10, 2013 the Salt Lake County District Attorney filed fourteen felony charges against Assistant Chief Marlon Jones for violation of Utah Code § 58-37-8(3)(A)(III).

88.     On May 10, 2013 a Warrant for the arrest of Assistant Chief Marlon Jones was issued by the Third District Court, State of Utah in connection with this case.

89.     Jones employment status was changed and he was placed on administrative leave pursuant to the direction of the Unified Fire Board.

90.     On May 13, 2013 counsel for Jones filed an Appearance of Counsel and  Motion to Recall the Warrant and allow Chief Jones to surrender or report to a hearing to address this matter.

91.     Counsel for Jones contacted Police Chief Robbie Russo and discussed the issuance of a warrant for Jones's arrest.

92.     Counsel was assured that no warrant would be issued without contacting him and allowing Chief Jones to self report.

93.     On June 5, 2013 Judge Blanch denied counsel's request to recall the warrant for Chief Jones arrest.

94.     In July of 2013, Counsel met with Assistant District Attorney Ethan Rampton to discuss the charges that were being screened against Jones.  In that meeting Counsel invited Rampton to meet with he and the prescribing doctors to investigate the matter further.

95.     Mr. Rampton declined to investigate the matter any further and informed Counsel of his intent to fully prosecute Jones.

96.     In July of 2013, while sitting in his home, Assistant Chief Marlon Jones was arrested in connection with the Warrant issued on May 10, 2013.

97.     Following his arrest Assistant Chief Jones was placed in handcuffs in front of his family and friends who were at his home.

98.     After being placed in handcuffs, Jones was taken via a marked police vehicle to the Salt Lake County Jail wherein he was booked and fingerprinted in connection with the arrest.

99.     Jones was released on pretrial release.

100.    On July 18, 2013 Jones entered into a pretrial release agreement wherein he agreed to specific terms of supervision in exchange for his release from jail.

101.    He was required report to a supervising agency and be monitored daily while released from jail.  This supervision continued until the charges were dismissed in October 2014.

102.    On August 7, 2013 Chief Jones was required to appear in court with counsel for an initial appearance.

103.    On that date and time Chief Jones was required to stand in front of an audience that included the public and reporters to hear charges announced against him and a new date be scheduled.

104.    On August 23, 2013 Jones was required by the Third District Court to attend a scheduling conference.

105.    At the August 23, 2013 hearing a preliminary hearing was scheduled for October 10, 2013.

106.    On September 17, 2013 the District Attorney's office requested a Special Setting Preliminary Hearing that was granted and the hearing was continued until October 25, 2013.

107.    This hearing was continued upon the stipulation of both parties.

108.    On January 3, 2014 counsel for Plaintiff filed a Motion to Suppress evidence based upon the violation of Plaintiff's rights in accordance with the investigation of his UDC database records and the interrogation of his medical care providers.

109.    On January 21, 2014 the time set for the Special Setting Preliminary Hearing, Plaintiff's counsel requested a ruling regarding the Motion to Suppress.

110.    At this time, Judge Chon was not willing to make a ruling on the motion and elected to return the case to Judge Blanch for further determination.

111.    On January 31, 2014 Plaintiff was excused from attending a scheduling conference but was required to have counsel at the hearing to set the Motion to Suppress for a hearing.

112.    On March 5, 2014 the Motion to Suppress was heard by Judge Blanch.

113.    At that time, Judge Blanch denied the motion to suppress on the record.  Counsel requested a written order from Judge Blanch.

114.    On April 7, 2014 counsel for Jones filed supplemental briefing for the court's consideration.

115.    On or about April 16, 2014 Judge Blanch denied the Motion to Suppress.

116.    On May 12, 2014 Mr. Rampton sent Counsel two documents referred to as 1102 statements from two of Jones's doctors.  The statements said that the doctors were treating Mr. Jones with prescription medication and that they "had not discussed" his receiving prescription medications from other doctors or medical care providers.

117.    On  May 13, 2014 Jones was in front of Judge Faust for a preliminary hearing.

118.    At the preliminary hearing Mr. Rampton attempted to avoid the testimony of the three medical doctors and enter the 1102 statements instead.

119.    Counsel for Jones objected to the 1102 statements because the doctors were present and available to testify in person.

120.    Mr. Rampton called each of the doctors to testify.

121.    Through the testimony of each of the doctors it was established that none of them believed Assistant Chief Jones had a prescription drug problem at any time.

122.    Each of the doctors testified that Jones exhibited no "red flags" of substance abuse dependency or abuse.

123.    Each of the doctors testified that Jones followed their directions regarding his treatment and use of medication.

124.    At the conclusion of the testimony of the preliminary hearing Judge Faust bound over the matter for trial but indicated that "he was binding it over, but just barely."

125.    On June 16, 2014 Counsel filed a Motion to Quash the Bindover on the grounds that there was not reasonable suspicion that Jones committed the alleged crimes.

126.    On June 20, 2014 Chief Jones was required to attend a hearing wherein he was to be arraigned on the criminal charges.

127.    Counsel objected to the arraignment pending a decision on the Motion to Quash the Bindover.

128.    At this hearing Jones requested permission to leave the state and attend girls camp with his daughter.  Judge Blanch granted Plaintiff's request.

129.    A hearing date of August 4, 2014, was set for the Motion to Quash the Bindover.

130.    On August 4, 2014 Judge Blanch denied the Motion to Quash the Bindover and formally arraigned Jones.

131.    Counsel requested immediate trial date.

132.    Judge Blanch scheduled an additional "scheduling conference" for the benefit of the District Attorney's office which indicated that they needed time to check with the witnesses.

133.    A scheduling conference was set for August 22, 2014.  Jones was excused but counsel was required to attend.

134.    On August 22, 2014 counsel attended the scheduling conference and set a three day jury trial for November 17-19, 2014.

135.     On August 29, 2014 Counsel met with Blake Nakamura regarding the prosecution of the case against Jones.

136.     In the meeting, Mr. Nakamura indicated that the records from the doctors were never sought nor investigated.

137.     Mr. Nakamura requested that Jones send the District Attorney copies of medical records referencing each of the various symptoms Jones was being treated for over the years and the corresponding treatment.

138.     On September 3, 2014 Counsel mailed to Mr. Nakamura the requested information.

139.     On October 1, 2014 the case against Chief Marlon Jones was dismissed with prejudice and all fourteen felony counts were abandoned.

140.     The Defendants acted negligently or willfully when they obtained Chief Jones' medical information without meeting the requirements of 15 U.S.C. § 1681b.

141.     The Plaintiff brings this action for injunctive and declaratory relief against law enforcement who seeks to review private and confidential medical histories pursuant to Utah Code § 58-37f-301 to secure privacy and protect employment rights for himself as well as other individuals similarly situated who have sought medical treatment and received prescription medications.

142.     The Plaintiff seeks an appropriate remedial order to ensure that the defendants discontinue their practice of investigating private databases of any individual they deem necessary without first seeking permission, a warrant, or having reasonable suspicion that the subject of the investigation has committed a crime.

143.    Plaintiff also asserts a claim against Detective Woods, Kelyvn Cullimore, and Cottonwood Heights for willfully or negligently obtaining information about Jones without a permissible purpose in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681n and 1681.

## FIRST CAUSE OF ACTION

42 U.S.C. § 1983 First, Fourth, Fifth, and Fourteenth Amendments of the
Constitution of the United States  and Article 1 §§ 1, 3, 7, 14,  of the
Constitution of the State of Utah

144.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the foregoing paragraphs of this complaint with the same force and effect as though fully set forth herein.

145.    The defendants' policies and practices, set forth above, with respect to the unregulated investigation of employees medical histories through the prescription drug database is a violation of Plaintiff's First Amendment Right to Freedom of Speech with his medical providers inasmuch as arbitrary searches of medical histories has a chilling effect on a person's willingness to communicate with his or her doctor.

146.    The defendants' policies and practices, set forth above, with respect to the unregulated investigation of employees medical histories through the prescription drug database is a violation of Plaintiff's Fourth Amendment Rights inasmuch as the invasion of privacy is specifically forbidden and only allowed if (1) defendant has reasonable suspicion of criminal activity or (2) the consent of the person being investigated or (3) a warrant issued by magistrate with the proper authority.

147.    The defendants' policies and practices, set forth above, with respect to the unregulated investigation of employees medical histories through the prescription drug database is a violation of Plaintiff's Fifth Amendment Right inasmuch as defendant is using private statements made to medical providers about and concerning Plaintiff as evidence against the

Plaintiff without Plaintiff being made aware that such statements could be used against him at a later time.

148.    The defendants' policies and practices, set forth above, with respect to the unregulated investigation of employees medical histories through the prescription drug database is a violation of Plaintiff's Fourteenth Amendment Rights inasmuch as he is denied due process regarding his employment status and by following the requirements of the previously indicated Constitutional Rights.

149.    The defendants' policies and practices, set forth above, with respect to the unregulated investigation of employees medical histories through the prescription drug database is a violation of Plaintiff's State of Utah Constitution rights under Article 1 § 1 inasmuch as the investigation violates his rights to communicate freely to his medical provider without fear of reprisal by the government.

150.    The defendants' policies and practices, set forth above, with respect to the unregulated investigation of employees medical histories through the prescription drug database is a violation of Plaintiff's State of Utah Constitution rights under Article 1 § 3 inasmuch as those rights protected by the United States Constitution are further protected by the Utah State Constitution by the acknowledgement that the United States Federal Government is the Supreme Law of the State of Utah.

151.    The defendants' policies and practices, set forth above, with respect to the unregulated investigation of employees medical histories through the prescription drug database is a violation of Plaintiff's State of Utah Constitution rights under Article 1 §7 inasmuch as defendants interfered with Plaintiff's employment and privacy interests without any consideration for due process under either the State or Federal Constitution.

21

152.     The defendants' policies and practices, set forth above, with respect to the unregulated investigation of employees medical histories through the prescription drug database is a violation of Plaintiff's State of Utah Constitution rights under Article 1 § 14 inasmuch as the investigation conducted by defendant violated Plaintiff's protection against searches of his papers and effects without the consent of Plaintiff, a warrant, or reasonable suspicion of criminal activity by the Plaintiff.

153.     As a result, this policy and practice is ***ultra vires,*** and further denial of the Plaintiff's due process rights under the Federal and Utah  State constitutions.

154.     The  Plaintiff is entitled to a judgment, pursuant to 42 U.S.C. § 1983, declaring that the defendants' policy and practices, set forth above, with respect to the use of the Utah Prescription Drug Database by law enforcement without consent, a warrant, or reasonable suspicion violates, the Plaintiff's constitutional rights as indicated herein.

155.     The Plaintiff is entitled to a judgment permanently enjoining the defendants from accessing the Utah Prescription Drug Database without the consent of the party, a warrant, or reasonable suspicion of criminal activity.

## SECOND CAUSE OF ACTION

Fair Credit Reporting Act, 15 U.S.C. § 1981, et seq.

156.     The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the foregoing paragraphs of this complaint with the same force and effect as though fully set forth herein.

157.     The Defendants obtained Plaintiff's medical information from UDC.

158.     The UDC meets the definition of  a consumer reporting agency in its operation of the prescription drug database.

159.    It is foreseeable that the information assembled and maintained by the UDC would be and is considered in connection with employment matters.

160.     Defendants did not meet the requirements of 15 U.S.C. § 1681b to be provided the Plaintiff's medical information.

161.    Defendants willfully sought and obtained the Plaintiff's medical information form the UDC database.

162.    Defendants negligently sought and obtained the Plaintiff's medical information from the UDC database.

163.    The Plaintiff has suffered actual damages as a result of the Defendants' action. The damages include but are not limited to emotional distress, embarrassment, anxiety, loss of income, lost opportunity,  and other stress proximately caused by the Defendants' actions and inactions.

164.    The Defendants' actions and inactions warrant the imposition of punitive damages as allowed by the Fair Credit Reporting Act.


WHEREFORE, the Plaintiff prays for the following relief:

a.   Declaratory judgment declaring that the defendants' policy and practices regarding the use of the Utah Prescription Drug Database violates the Plaintiff's constitutional rights as indicated herein.

b.   Injunction permanently enjoining the defendants from accessing the Utah Prescription Drug Database without the consent of the party, a warrant, or reasonable suspicion of criminal activity

c.   An award of statutory and  actual damages in an amount to be determined at trial;

d.   An award of punitive damages as allowed by the Fair Credit Reporting Act;

e.   An award of costs, including attorney fees as allowed by 42 U.S.C. §1988.

f.   Such other and further relief that is just and proper.


DATED THIS 21st day of April, 2015.


/s/Tyler B. Ayres
Tyler B. Ayres
Attorney for Plaintiff