IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MARLON JONES,<br><br>    Plaintiff,<br><br>v.<br><br>JAMES WOODS, KELVYN CULLIMORE, COTTONWOOD HEIGHTS, and JOHN AND JANE DOES 1-10,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br><br><br>Case No. 2:15-CV-278 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendants James Woods ("Detective Woods"),

Kelvyn Cullimore ("Mayor Cullimore"), and Cottonwood Heights' (collectively, "Defendants")

Motion to Dismiss.  For the reasons discussed below, the Court will grant the Motion.

## I.  BACKGROUND

The following facts are taken from the Plaintiff's Complaint and accepted as true for the

purpose of this Motion.  On April 23, 2013, Detective Woods was contacted by the Chief of

Police for Cottonwood Heights, Robbie Russo ("Chief Russo"), and informed that the Unified

Fire Department was missing medications from ambulances at several fire departments in the

Salt Lake Valley.[1]  The missing medications included sedatives and opioids.[2]  Chief Russo

obtained a list of Unified Fire Department employees from Cottonwood Heights Mayor

---

[1] Docket No. 2 ¶ 58.

[2] *Id.* ¶ 59.

Cullimore, which he provided to Detective Woods.[3]  Detective Woods searched the Utah

Controlled Substance Database (the "Database") to "develop suspect leads of those who have the

appearance of Opioid dependencies."[4]  The Database, an electronic database maintained by the

Utah Division of Occupational and Professional Licensing ("DOPL"), stores information about

"every prescription for a controlled substance dispensed in the state to any individual other than

an inpatient in a licensed health care facility."[5]  At the time Detective Woods searched the

Database, law enforcement officers were able to access the Database without a warrant.[6]

     Using the employee list, Detective Woods searched the Database to develop a list of four

suspects.[7]  Plaintiff was one of the four suspects.  With information from the Database, Detective

Woods contacted Plaintiff's doctors and pharmacists multiple times to discuss Plaintiff's medical

conditions and treatment.[8]  Detective Woods later provided copies of Plaintiff's private medical

records to Mayor Cullimore.[9]  At Unified Fire Board meetings following the investigation,

Mayor Cullimore disclosed Plaintiff's prescription drug records to members of the Board and

openly discussed Plaintiff's use of these medications.[10]  Prior to charges being filed, Plaintiff did

---

[3] *Id.* ¶¶ 60–61.

[4] *Id.* ¶¶ 63–64.

[5] Utah Code Ann. § 58-37f-201(5).

[6] The statute has since been amended to require a warrant.

[7] Docket No. 2 ¶ 65.

[8] *Id.* ¶ 67.

[9] *Id.* ¶ 77.

[10] *Id.* ¶ 78.

not consent to any review of his medical information and Detective Woods never obtained a

warrant to review his medical information.[11]

On May 10, 2013, the Salt Lake County District Attorney filed fourteen felony charges

against Plaintiff for violations of the Utah Controlled Substances Act.[12]  The Unified Fire Board

subsequently placed Plaintiff on administrative leave.[13]  On October 1, 2014, the criminal case

against Plaintiff was dismissed with prejudice.[14]

Plaintiff initially alleged that Defendants violated his rights under the First, Fourth, Fifth,

and Fourteenth Amendments to the United States Constitution, Article I, §§ 1, 3, 7, and 14 of the

Utah Constitution, and the Fair Credit Reporting Act ("FCRA").  In Plaintiff's Opposition to

Defendants' Motion to Dismiss, Plaintiff abandoned all claims except his Fourth Amendment

and FCRA claims.[15]  The Court will limit its discussion to those claims.

## II.  STANDARD OF REVIEW

Under Rule 12 of the Federal Rules of Civil Procedure, a party can move to have a claim

dismissed for "failure to state a claim upon which relief can be granted."[16]  When evaluating the

motion, the court must "accept as true 'all well-pleaded factual allegations in a complaint and

---

[11] *Id.* ¶¶ 81–83.

[12] *Id.* ¶ 87.

[13] *Id.* ¶ 89.

[14] *Id.* ¶ 139.

[15] Docket No. 21, at 8, 24.

[16] Fed. R. Civ. P. 12(h)(2)(B). Since Defendants have filed an Answer, the Court considers Defendants' Motion under Rule 12(c).  The Court applies the same standards in evaluating motions under Rule 12(b)(6) and Rule 12(c).  *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n. 2 (10th Cir. 2002).

view these allegations in the light most favorable to the plaintiff.'"[17]  Well-pleaded allegations

must contain "enough facts to state a claim to relief that is plausible on its face."[18]  Plausibility

"refer[s] to the scope of the allegations in a complaint: if they are so general that they encompass

a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims

across the line from conceivable to plausible.'"[19]  "A court should disregard conclusory

allegations that lack supporting factual content."[20]

### III.  DISCUSSION

### A.   MUNICIPAL LIABILITY

Plaintiff asserts claims against Cottonwood Heights.  "[T]o establish municipal liability, a

plaintiff must show: 1) the existence of a municipal policy or custom and 2) a direct causal link

between the policy or custom and the injury alleged."[21]  Plaintiff alleges that Detective Wood is

an employee of Cottonwood Heights and that Mayor Cullimore is the mayor of the city, but does

not cite any municipal policy or show a link between a policy or custom and the alleged injury.

A municipality is "not [to] be held liable under § 1983 solely because its employees inflicted

---

[17] *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1178 (10th Cir. 2012) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).

[18] *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

[19] *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

[20] *Foerster v. Lubeck*, No. 2:14-CV-344-DB, 2014 WL 3858507, at *1 (D. Utah Aug. 5, 2014).

[21] *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (citing *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989)).

injury."[22]  Here, Plaintiff has failed to plead sufficient allegations against the city.  Therefore,

Plaintiff's Fourth Amendment claims against Cottonwood Heights must be dismissed.

B.       QUALIFIED IMMUNITY

Detective Woods and Mayor Cullimore argue they are entitled to qualified immunity.

"Under the qualified immunity doctrine, 'government officials performing discretionary

functions, generally are shielded from liability for civil damages insofar as their conduct does not

violate clearly established [federal] statutory or constitutional rights of which a reasonable

person would have known.'"[23]  "When a defendant raises a claim of qualified immunity, the

burden shifts to the plaintiff to show that the defendant is not entitled to that immunity."[24]

The plaintiff carries the "heavy burden of showing (1) the defendant-officer in question

violated one of his constitutional rights, and (2) the infringed right at issue was clearly

established at the time of the allegedly unlawful activity such that 'every reasonable official

would have understood that what he [was] doing' violated the law."[25]  "Failure on either

qualified immunity element is fatal to the plaintiff's cause."[26]  Courts have the discretion to

determine which of the two prongs of qualified-immunity analysis to address first.[27]

---

[22] *Id.*

[23] *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).

[24] *Douglas v. Dobbs*, 419 F.3d 1097, 1100 (10th Cir. 2005) (citing *Medina v. Cram,* 252 F.3d 1124, 1128 (10th Cir. 2001)).

[25] *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011) (quoting *Ashcroft v. al–Kidd,* 563 U.S. 731, 131 S.Ct. 2074, 2080, 2083 (2011)).

[26] *Id.*

[27] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

1.      *Mayor Cullimore*

Plaintiff alleges that Mayor Cullimore provided Detective Woods with a list of employees of the Unified Fire Department, but does not allege any acts whereby Mayor Cullimore violated Plaintiff's Fourth Amendment rights.  Plaintiff provides nothing to suggest that the Fourth Amendment prohibited Mayor Cullimore from providing Detective Woods a list of employees.  Thus, Plaintiff fails the first prong of the qualified immunity test and Mayor Cullimore is entitled to qualified immunity.  Even if Mayor Cullimore's actions did somehow violate Plaintiff's Fourth Amendment rights, that right was not clearly established.

2.      *Detective Woods*

Plaintiff contends that Detective Woods is not entitled to qualified immunity because every reasonable official understands they cannot obtain private medical records without a warrant.  "The court must ask whether 'every reasonable official would have understood that *what he [did]* violate[d] that right.'" [28]  "To satisfy this standard, '[w]e do not require a case directly on point,' but neither may a district court deny immunity unless 'existing precedent [has] placed the statutory or constitutional question *beyond debate.*'"[29]  The Court must consider whether it was beyond debate that Detective Woods would have understood that searching the Database without obtaining a warrant violated the Fourth Amendment.

In *Douglas v. Dobbs*, the plaintiff claimed her Fourth Amendment rights were violated when the defendant authorized law enforcement officials to submit a motion to request search

---

[28] *Kerns*, 663 F.3d at 1183 (quoting *Ashcroft,* 131 S. Ct. at 2083).

[29] *Id.* (quoting *Ashcroft,* 131 S. Ct. at 2083).

authorization of her prescription records.[30]  The Tenth Circuit held that the plaintiff did not identify a specific Fourth Amendment right that was violated and did not address "[w]hether a warrant is required to conduct an investigatory search of prescription records."[31]  The court stated, "[this] is an issue that has not been settled, and is an issue we need not decide in the present case."[32]

The Tenth Circuit reiterated this point in *Kerns v. Bader*, where the plaintiff claimed his Fourth Amendment rights were violated when law enforcement requested medical records from a third party hospital.[33]  The Tenth Circuit, referencing *Douglas*, stated "the uncertain state of the law in 2005" indicates "we are hardly in a position to say that the proper resolution of the issue was simultaneously beyond doubt."[34]  Thus, the officer requesting the medical records was entitled to qualified immunity because the law was not clearly established.

In a similar case against these same Defendants, this Court recently held that Defendants were entitled to qualified immunity for substantially the same conduct.[35]  Defendants obtained plaintiff Pyle's prescription drug information from the Database as part of the same investigation that gave rise to Plaintiff's claims.  The Court granted qualified immunity to Detective Woods and Mayor Cullimore because the law on the constitutionality of a law enforcement officer's

---

[30] 419 F.3d at 1103.

[31] *Id.*

[32] *Id.*

[33] 663 F.3d at 1184.

[34] *Id.*; s*ee also Herring v. Keenan*, 218 F.3d 1171, 1173 (10th Cir. 2000) (recognizing "a constitutional right to privacy" in medical records but granting qualified immunity because no clearly established law put defendant on notice that his conduct violated that right)).

[35] *Pyle v. Woods*, No. 2:15-CV-143-TC, 2015 WL 5794345, at *1 (D. Utah Oct. 2, 2015).

warrantless access to the Database was not clearly established.[36]  The same result is required here.

Because Plaintiff has not met his burden of showing that Defendants violated a clearly established Fourth Amendment right that was beyond debate, Defendants are entitled to qualified immunity.  In light of the above, the Court need not address the parties' other arguments concerning Plaintiff's Fourth Amendment claim.

C.     FAIR CREDIT REPORTING ACT

Plaintiff argues that Defendants violated the FCRA because they did not have a permissible purpose in obtaining information for use in connection with his employment.[37]

Congress adopted the FCRA "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information."[38] To carry out this purpose, the FCRA outlines the procedures a consumer reporting agency must follow to carry out their duties.

A consumer reporting agency is

any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility

---

[36] *Id.* at *2–3.

[37] Docket No. 2 ¶¶ 41–45.

[38] 15 U.S.C. § 1681(b).

of interstate commerce for the purpose of preparing or furnishing consumer reports.[39]

The FCRA defines a consumer report as

any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consume's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title.[40]

The purpose of the FRCA is generally limited to credit reporting. Plaintiff's contention that DOPL was a consumer reporting agency and that the information contained in the Database was a consumer report is not supported by the statute or case law.

Even if the Database is a consumer report and DOPL is a consumer reporting agency, Defendants' actions are exempt under the FCRA. Exempted communications for employee investigations include when: "(B) the communication is made to an employer in connection with an investigation of . . . suspected misconduct relating to employment."[41] Defendants accessed the Database in response to an investigation of suspected misconduct. Thus, this communication would be excluded.

Plaintiff argues Defendants cannot avail themselves of this exception since they failed to comply with the disclosure requirements under 15 U.S.C. § 1681a(y)(2). However, the disclosure requirements are employer obligations, not the obligation of Defendants, who are not

---

[39] 15 U.S.C.A. § 1681a(f).

[40] 15 U.S.C. § 1681a(d)(1).

[41] 15 U.S.C. § 1681a(y)(1)(B).

Plaintiff's employer.  Accordingly, the communication is exempted and Plaintiff's claim under the FCRA fails.

IV.  CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Dismiss (Docket No. 15) is GRANTED.  The Clerk of the Court is directed to close this case forthwith.

DATED this 16th day of November, 2015.

BY THE COURT:

Ted Stewart
United States District Judge